## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| IDA ALETHEA JOHNSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   v. | ) | CIVIL ACTION NO. 2:24-00202-N |
| | ) | |
| FRANK BISIGNANO, | ) | |
| *Commissioner of Social Security*,[1] | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ida Alethea Johnson brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under

---

[1] Frank Bisignano's nomination to be Commissioner of Social Security was confirmed on May 6, 2025, and he began his term of service the following day. *See*:

- https://www.congress.gov/nomination/119th-congress/20 (last visited 9/30/2025)

- https://www.ssa.gov/history/commissioners.html (last visited 9/30/2025)

Accordingly, Bisignano was automatically substituted for former Acting Commissioner Carolyn Colvin as the party defendant in this action under Federal Rule of Civil Procedure 25(d), and this change does not affect the pendency of this action. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title of this case on the docket accordingly.

Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon due consideration of the parties' briefs (Docs# 14, 15) and those portions of the certified transcript of the administrative record (Docs# 11 & 11-1) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.    *Procedural Background*

Johnson filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on April 25, 2022. After the applications were denied initially, and again on reconsideration, Johnson requested a hearing on her application with an Administrative Law Judge ("ALJ") of the SSA's Office of Hearings Operations. The hearing was held on January 4, 2024. On April 2, 2024, the ALJ issued an unfavorable decision on Johnson's applications, finding her not entitled to benefits. (*See* Doc# 11-1, PageID.41-64).

The Commissioner's decision on Johnson's applications became final when the Appeals Council with the SSA's Office of Appellate Operations denied her request for

---

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[3]    With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs# 8, 9).
    With the Court's agreement, the parties waived the opportunity to present oral argument. (*See* Docs# 17, 18).

review of the ALJ's unfavorable decision on May 3, 2024. (*See id.*, PageID.35-39). Johnson subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's second final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold

for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court "'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that

4

could have been, but was not, made. That is, even if the evidence could support
multiple conclusions, we must affirm the agency's decision unless there is no
reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th
Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as
automatons. [A court] must scrutinize the record as a whole to determine if the
decision reached is reasonable and supported by substantial evidence[.]"
*Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v.
Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct
a de novo proceeding, nor to rubber stamp the administrative decisions that come
before us. Rather, our function is to ensure that the decision was based on a

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The
court need not determine whether it would have reached a different result based upon
the record" because "[e]ven if we find that the evidence preponderates against the
[Commissioner]'s decision, we must affirm if the decision is supported by substantial
evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the
substantial evidence standard, "we do not reverse the [Commissioner] even if this
court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v.
Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our
deferential review, there is no inconsistency in finding that two successive ALJ
decisions are supported by substantial evidence even when those decisions reach
opposing conclusions. Faced with the same record, different ALJs could disagree with
one another based on their respective credibility determinations and how each weighs
the evidence. Both decisions could nonetheless be supported by evidence that
reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230
(11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the
ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is
substantially supportive evidence, the findings cannot be overturned."); *Edlund v.
Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001)
("If the evidence is susceptible to more than one rational interpretation, the court
may not substitute its judgment for that of the Commissioner.").

reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *Accord Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317–18 (11th Cir. 2021). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford

The "substantial evidence" "standard of review applies only to findings of fact.

---

the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) *(*"Harner's references to the substantiality of the evidence, the administrative law judge's analysis of her fibromyalgia, and the administrative judge's consideration of her daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.,* *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th

Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

 Relevant here, eligibility for DIB and SSI requires a showing that the claimant

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986)

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

(per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in other kinds of substantial gainful employment that exist in significant numbers in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Johnson met the applicable insured

status requirements for DIB through December 31, 2023, and that she had not engaged in substantial gainful activity since her amended alleged disability onset date of January 7, 2022.[8] (Doc# 11-1, PageID.46). At Step Two,[9] the ALJ determined that Johnson had the following severe impairments: carpal tunnel syndrome (CTS), disorders of skeletal spine, obesity, and right shoulder bursitis. (Doc# 11-1, PageID.46-49). The ALJ also expressly found the following impairments to be nonsevere: status post fracture of the fourth metatarsal of the left foot, essential hypertension, obstructive sleep apnea (OSA), and migraines. (*Id.*, PageID.47). At Step Three,[10] the ALJ found that Johnson did not have an impairment or combination of

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted). Johnson had initially alleged disability beginning April 24, 2020. (*See* Doc# 11-1, PageID.44).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[10] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is

impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 11-1, PageID.49-52).

At Step Four,[11] the ALJ determined that Johnson had the residual functional

---

'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[11] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an

capacity (RFC) "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[ [12] ] except that she can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, and scaffolds; can frequently reach in all directions, including overhead, with the right upper extremity; is unlimited in reaching with the left upper extremity; can frequently handle and finger with the dominant right hand; is unlimited in handling and fingering with the left hand; needs to avoid concentrated exposure to extreme cold, heat, wetness, humidity, and vibration; and needs to avoid all exposure to hazardous conditions such as unprotected heights and dangerous machinery." (Doc# 11-1, PageID.52-55). Based on the RFC and the testimony of a vocational expert,[13]

---

administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "sedentary" work are as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

[13] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that

the ALJ found that Johnson was unable to perform any past relevant work. (Doc# 11-1, PageID.55-56).

However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there existed a significant number of other jobs in the national economy as a fishing product assembler (32,000 jobs nationally), cuff folder (28,000 jobs nationally), and semiconductor bonder (7,000 jobs nationally) that Johnson could perform given her RFC, age, education, and work experience. (*Id.*, PageID.56-57). Thus, the ALJ found that Johnson was not "disabled" under the Social Security Act. (*Id.*, PageID.57).

## IV.    *Analysis*

Johnson claims that the ALJ reversibly erred by failing to find that her migraine headaches were a severe impairment at Step Two, and by failing to account for them in the RFC at Step Four. No reversible error has been shown.

The Eleventh Circuit has "applied the harmless error doctrine to Social Security appeals." *Edgecomb v. Comm'r of Soc. Sec.*, 841 F. App'x 142, 144 (11th Cir. 2020) (per curiam) (unpublished) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). An "error is harmless if it did not affect the judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (per curiam) (unpublished) (citing *Diorio*, 721 F.2d at 728). *Accord Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) (per curiam) (unpublished).

---

the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

"Remand is unwarranted unless an error creates fundamental unfairness or prejudice." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1274 n.11 (11th Cir. 2024) (citing *Diorio*, 721 F.2d at 728). *See also, e.g.*, *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (unpublished) ("When…an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." (citing *Diorio*, 721 F.2d at 728)). " '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.' " *Raper*, 89 F.4th at 1274 n.11 (quoting *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317–18 (11th Cir. 2021)).

Step Two is "a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). *See also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied…"). "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588. Therefore, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam)

(unpublished).[14] The Eleventh Circuit has repeatedly held that any error in not

---

[14] *See also Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 745 (11th Cir. 2018) (per curiam) (unpublished) ("Step two is a 'filter' which eliminates groundless claims. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). To meet his burden at this step, Mr. Wood only had to show 'at least one' severe impairment. *See id.* He met his burden and the ALJ appropriately proceeded to the next step of the sequential analysis. Therefore, any error in not finding additional severe impairments did not harm Mr. Wood."); *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 992–93 (11th Cir. 2018) (per curiam) (unpublished) ("Ball contends that the ALJ erred at the second step of the five-step analysis because she found that Ball's depression was not a severe impairment. But step two of the test 'acts as a filter' in that the 'finding of any severe impairment ... is enough to satisfy the requirement of step two' and allow the ALJ to proceed to step three. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). As a result, even if the ALJ should have determined that Ball's depression was severe, any error was harmless because the ALJ determined that her compression fracture, spur formation, and lumbar fractures were severe, which allowed the ALJ to move on to step three."): *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (per curiam) (unpublished) ("In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (per curiam) (unpublished) ("[E]ven if Medina's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were severe impairments, allowing him to move onto step three of the test."); *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (per curiam) (unpublished) ("Even if the ALJ erred in not indicating whether Flemming's psychotic disorder was a severe impairment, the error was harmless because the ALJ concluded that Flemming had two other severe impairments, thereby satisfying step two." (citing *Jamison*, 814 F.2d at 588; *Diorio*, 721 F.2d at 728)); *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015) ("[S]tep two is merely a filter, and any error in considering an additional impairment is harmless since it does not factor into the determination of disability." (citing *Jamison*, 814 F.2d at 588)); *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (per curiam) (unpublished) ("[T]he finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." (citing *Jamison*, 814 F.2d at 588)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("Based on our precedent and the regulations, ... it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any

finding additional severe impairments at Step Two is harmless, so long as the ALJ finds at least one and considers all of the claimant's medically determinable impairments, both severe and non-severe, at the later steps of the sequential evaluation.[15]

---

way, have changed the step-two analysis, and she cannot demonstrate error below."); *Heatly*, 382 F. App'x at 824–25 ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires.").

[15] *Compare Schink*, 935 F.3d at 1268 ("Our conclusion that substantial evidence does not support the ALJ's finding that Schink's mental impairments were non-severe … could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered Schink's mental impairment when assessing his RFC, and reached conclusions about Schink's mental capabilities supported by substantial evidence. Here, though, the ALJ's RFC assessment was limited to Schink's physical abilities and impairments and erroneously omitted his mental ones. As a result, we cannot say that the erroneous finding of non-severity was harmless."), *with Ball*, 714 F. App'x at 993 ("Ball's argument that the purported error [in failing to find additional severe impairments in step two] affected the ALJ's residual functional capacity analysis in step four fails because the ALJ considered all of Ball's symptoms and impairments (including her alleged depression), her medical records and testimony, and all opinion evidence (including Dr. Whitlock's opinion) in determining her residual functional capacity."), *Tuggerson-Brown*, 572 F. App'x at 951-52 ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. Despite Tuggerson–Brown's arguments to the contrary, it is apparent from the face of the ALJ's decision and the RFC report relied upon by the ALJ that the ALJ did, in fact, consider all medical evidence in combination in concluding that Tuggerson–Brown was not disabled. In performing his analysis, the ALJ stated that he evaluated whether Tuggerson–Brown had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence. *See Wilson*, 284 F.3d at 1224–25. The ALJ went beyond those statements in his analysis, specifically discussing evidence of Tuggerson–Brown's depression, diabetes, leg, neck, and back pain, and mild degenerative disc disease. The RFC report likewise addressed many of the same symptoms. Accordingly, the record sufficiently demonstrates that the ALJ properly considered all of Tuggerson–

Here, the ALJ found several severe impairments at Step Two and proceeded to the remaining steps of the sequential evaluation; thus, any error in not finding Johnson's migraines to also be a severe impairment was harmless. While the ALJ did not expressly discuss migraines at Step Three, he did state that Johnson did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in Appendix 1, and that "the medical evidence does not document abnormalities necessary to meet the criteria of any listing…" (Doc# 11-1, PageID.49). Johnson has not argued that the ALJ failed to consider her migraines at Step Three, and the Eleventh Circuit has held that similar language is sufficient to show that an ALJ considered all medically determinable impairments and relevant listings at Step Three. *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (per curiam); *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (per curiam) (unpublished); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014) (per curiam) (unpublished).

The ALJ discussed the evidence regarding Johnson's migraines as follows:

The claimant has been treated for migraines with antimigraine medications, including in injection form, and pain medications (Exhibits C7F, C12F, and C21F). Her normal neurological examinations have been noted, and magnetic resonance imaging (MRI) results of the brain have essentially been negative (Exhibits C5F, C8F, C22F, and C31F). Although her migraine complaints have waxed and waned since the amended alleged onset date, her reports of doing well with her

---

Brown's impairments, even those not specifically found to be severe, in reaching a conclusion that she was not disabled."), *and Flemming*, 635 F. App'x at 676-77 (similar).

headaches and rarely getting migraines have been noted (Exhibits C7F, C12F, and C26F). Moreover, the connection between migraines and OSA has been noted, and the claimant has now been fitted with a CPAP machine (Exhibits C26F and C28F).

(Doc# 11-1, PageID.47).[16]

It is reasonably apparent that the ALJ found that Johnson's migraines were largely controlled by medication and other treatment, and thus did not warrant any greater limitations than those already imposed in the RFC. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (quotation omitted)); 20 C.F.R. §§ 404.1530(a)-(b), 416.930(a)-(b) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work…If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind or, if you are already receiving benefits, we will stop paying you benefits."). Substantial evidence supports this determination, as treatment notes post-dating the amended disability onset date of January 7, 2022, consistently document statements from Johnson indicating that she is "doing great" and "really well" with her headache medications, that she "had

---

[16] This discussion is taken from Step Two. While the ALJ did not specifically discuss Johnson's migraines again in the Step Four section of his decision, it is reasonably apparent that the ALJ intended this discussion of the migraine evidence to apply to the disability analysis in general, and there is no rigid rule than an ALJ must repeat the same factual analysis of an issue in each step. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (citation omitted)).

only a couple of headaches" in between visits, and that she "rarely gets migraines." (Doc# 11-1, PageID.718, 908, 1208, 1256, 1261, 1266). Those treatment notes also indicate that Johnson was repeatedly advised to "observe good sleep hygiene measures" and get "enough sleep since sleep deprivation triggers more headaches" (*id.*, PageID.911, 915, 1259, 1264, 1269), which supports the ALJ's conclusion that Johnson being provided a CPAP machine would further control her migraines.

Johnson's brief cites only one treatment note post-dating the disability onset date, from May 3, 2023, that cuts against the ALJ's findings, as it states Johnson reported that "she continues to have migraine headaches every morning" and that her medications "help[] some days but not others." (*Id.*, PageID.1214).[17] However, nothing in that note indicated the intensity of these claimed migraines, and the examining medical professional simply ordered Johnson to continue with her normal course of medication, avoid certain triggering foods, and take a "sleep study." (Doc# 11-1, PageID.1216). Moreover, notes from later examinations with Johnson's treating neurologist on May 23 and July 6, 2023, return to stating that Johnson's migraines were few and largely controlled by medication. (*Id.*, PageID.1256, 1261). The ALJ appears to have noted this one inconsistency, observing that Johnson's "migraine complaints have waxed and waned since the amended alleged onset date[,]" but ultimately concluded that the greater weight of the evidence showed that Johnson's

---

[17] Johnson's brief also cites "Tr. 1339" as purportedly being an August 28, 2023 treatment note showing Johnson "was having migraine headaches at a rate of 3 per month[,]" "had failed" several medications, and was having "issues with recurrent nausea." (Doc# 14, PageID.1455). However, "Tr. 1339" is a mostly blank page that is part of a treatment note from April 2021. (Doc#11-1, PageID.1373).

migraines had substantially decreased in frequency and were controlled by medication. And the mere fact a claimant can point to some evidence that cuts against an ALJ's factual finding does not mandate reversal, since the finding needs only substantial evidentiary support to be upheld, even if the evidence preponderates against it. *See Ingram*, 496 F.3d at 1260. Here, at the very least substantial evidence supports the ALJ's conclusion that Johnson's migraines were largely controlled by treatment and did not warrant further limitations in the RFC at Step Four.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Johnson's applications for benefits is due to be **AFFIRMED**.

## V.    *Conclusion*

In accordance with the foregoing analysis, the Commissioner's final decision denying Johnson's April 25, 2022 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Judgment in accordance with this order shall hereafter be set out by separate document, in accordance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **30th** day of **September 2025**.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**